# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SY LEE CASTLE,<br><br>        Plaintiff,<br><br>    v.<br><br>A. HEDGPETH, et al.,<br><br>        Defendants. | CASE NO. 1:08-cv-01754-AWI-SKO PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION TO DISMISS BE DENIED<br><br>(Doc. 22)<br><br>OBJECTIONS DUE WITHIN 30 DAYS |

Plaintiff Sy Lee Castle ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. On November 19, 2009, Defendants Hedgpeth, Marta, and Amavisca ("Defendants") filed a motion to dismiss on the ground that Plaintiff's complaint fails to state any claims upon which relief can be granted under Section 1983. (Doc. #22.) Plaintiff filed an opposition to Defendants' motion on January 11, 2010. (Doc. #26.) Defendant filed a reply to Plaintiff's opposition on January 19, 2010. (Doc. #28.)

**I.   Background**

    **A.   Plaintiff's Complaint**

This action proceeds on Plaintiff's first amended complaint filed on May 12, 2009. (Doc. #7.) Plaintiff alleges that he filed a grievance on December 29, 2007 that complained about Kern Valley State Prison's ("KVSP") policies for receiving religious packages. Plaintiff alleges that he received a "regular quarterly package" on December 27, 2007. After he received this package, he informed an officer that Plaintiff's family purchased a "religious package" that contained a prayer rug and prayer oil. Plaintiff claims that this "religious package" was sent to Plaintiff some time in

1

1   November 2007.  The officer told Plaintiff that "the institution is not allowing no[sic] Islamic
2   packages to be given to inmates."  (First Am. Compl. 4.)  Plaintiff claims that this is discriminatory
3   policy by Defendant A. Hedgpeth and Defendant Marta.  Plaintiff claims that KVSP officials failed
4   to implement policies that permitted Muslim inmates to possess religious artifacts, such as Qurans,
5   reading materials, caps, rugs, mats, oils, and prayer beads.  As examples, Plaintiff cites to a July 31,
6   2007 incident where Plaintiff's cell was searched and Plaintiff's prayer oil was confiscated, and a
7   November 7, 2007 incident where Plaintiff's reading materials were confiscated.  Plaintiff claims
8   that these incidents occurred as a result of the KVSP administration's failure to implement policies
9   that protected Muslim inmates from having their property confiscated.

10  Plaintiff claims that he sent a "GA-22 inmate request for interview" form to Defendant Marta
11  on March 5, 2008.  Plaintiff informed Marta that Plaintiff's administrative appeal was granted and
12  he could receive his religious package.  Plaintiff asked Marta why he had not received his package.
13  On March 31, 2008, Defendant Amavisca responded to Plaintiff's "request for interview."  Amavisca
14  informed Plaintiff that he could have a religious package, but that "a religious package is considered
15  a quarterly package" by prison regulations, and that Plaintiff had to receive authorization from the
16  sergeant in charge of receiving and releasing packages through Plaintiff's chaplain.  Plaintiff was
17  also informed that, while he could receive religious packages, he could not purchase prayer oil.
18  Plaintiff was told that if his religious package contained prayer oil, it would be returned to the
19  vendor.

20  Plaintiff claims that Defendant Hedgpeth authored a regulation that concerned the use of
21  prayer oils.  The regulation stated that prayer oil could only be used during religious services and that
22  inmates could not purchase or possess their own prayer oil.  On July 8, 2008, Plaintiff alleges that
23  Hedgpeth authored a memorandum which stated that prison regulations were amended to allow
24  inmates to purchase their own prayer oil.

25      **B.    <u>Defendants' Motion to Dismiss</u>**

26  In their motion to dismiss, Defendants argue that they are entitled to dismissal pursuant to
27  Federal Rule of Civil Procedure 12(b)(6) because Plaintiff has not alleged sufficient facts to state a
28  claim for the violation of his First Amendment rights.  (Defs.' Mot. to Dismiss Pl.'s Compl. for

Failure to State a Claim 1:20-24.) Defendants further argue that Plaintiff has not alleged sufficient facts to hold Defendant Hedgpeth liable for any constitutional violation because Plaintiff has not demonstrated that Hedgpeth was personally involved in any deprivation of Plaintiff's constitutional rights. (Defs.' Mot. to Dismiss 1:25-27.)

Defendants argue that Plaintiff's complaint fails to state a claim because Plaintiff has not alleged that he has been denied a religious package that conformed to prison regulations. (Defs.' Mot. to Dismiss 3:2-14.) Specifically, Defendants contend that Plaintiff failed to allege that the religious package that was withheld from Plaintiff conformed to KVSP's regulations for receiving packages. (Defs.' Mot. to Dismiss 3:16-4:11.) Defendants note that Plaintiff alleges he received a package in December 2007 and that KVSP inmates are only allowed one package per quarter. (Defs.' Mot. to Dismiss 3:24-26.) Defendants infer that Plaintiff did not receive his religious package because he already received the allowable number of packages for the quarter. (Defs.' Mot. to Dismiss 3:24-27.)

Defendants also argue that Plaintiff has not alleged that he was denied any religious package after new policies were promulgated in July 2008 regarding the receipt of religious packages. (Defs.' Mot. to Dismiss 4:1-6.) Defendants also contend that KVSP regulations require an inmate to obtain prior written permission to receive or possess any religious artifact and Plaintiff has not alleged that he had written permission to receive or possess religious artifacts. (Defs.' Mot. to Dismiss 4:7-11.) Finally, Defendants note that Plaintiff's allegation that KVSP implemented policies to prevent Muslim inmates from possessing religious artifacts conflicts with Plaintiff's allegation that KVSP had a policy that permitted Muslin inmates to receive and possess up to 16 ounces of prayer oil. (Defs.' Mot. to Dismiss 4:26-5:2.)

Defendants also argue that Plaintiff fails to state a cognizable claim against Defendant Hedgpeth. (Defs.' Mot. to Dismiss 5:12-6:21.) Defendants contend that Plaintiff has not demonstrated that Hedgpeth was personally involved with any deprivation of Plaintiff's constitutional rights. (Defs.' Mot. to Dismiss 5:14-19.)

### C. Plaintiff's Opposition

Plaintiff argues that the religious packages that were withheld by KVSP officials did, in fact,

conform with the prison's regulations. (Pl.'s Opp'n to Def's[sic] Notice of Mot. to Dismiss 3:14-16.) Plaintiff also contends that he had written permission to receive and possess religious artifacts. (Opp'n 5:5-17.)

Plaintiff also argues that Defendants misconstrued the prison's regulations when they asserted that Plaintiff's package was presumably denied because he is only allowed to receive one package per quarter and the religious package that was denied was Plaintiff's second package in that quarter. (Opp'n 6:7-14.) Plaintiff claims that prison regulations permit Plaintiff to receive one personal package and one religious package, and the package that Plaintiff received was his personal package. (Opp'n 6:7-14.)

Plaintiff also argues that Defendant Hedgpeth should not be dismissed from this action. (Opp'n 12:4-14:24.) Plaintiff claims that Hedgpeth authored regulations that prohibited inmates from purchasing or possessing prayer oils outside the chapel. (Opp'n 12:7-14.) Plaintiff claims that his requests for oil were denied pursuant to the regulations authored by Hedgpeth. (Opp'n 12:24-28.)

### D. **Defendants' Reply**

In reply, Defendants argue that Plaintiff's complaint fails to establish that his package conformed to prison regulations. (Reply to Opp'n to Mot. to Dismiss Compl.; Mem. of P. & A. 2:1-6:11.) Defendants also argue that Plaintiff's complaint fails to allege a First Amendment violation against Defendant Hedgpeth and fails to allege that the exercise of his religion was substantially impaired. (Reply 6:12-7:16.)

## II. **Discussion**

Defendants argue that they are entitled to a dismissal under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff's first amended complaint fails to state a claim upon which relief can be granted under Section 1983.

### A. **Pleading Standard**

To survive a motion to dismiss for failure to state a claim, a complaint must meet the pleading standard set by Federal Rule of Civil Procedure 8. Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual

4

allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

### B.   First Amendment Free Exercise Claims

Plaintiff claims that his rights under the First Amendment were violated because Defendants Hedgpeth, Marta, and Amavisca interfered with Plaintiff's exercise of his religion.

The First Amendment of the United States Constitution provides that "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const., amend. I. "Inmates clearly retain protections afforded by the First Amendment . . . including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citing Pell v. Procunier, 417 U.S. 817, 822 (1974); Cruz v. Beto, 405 U.S. 319 (1972)). In order to merit protection under the Free Exercise Clause, a plaintiff must demonstrate that his/her belief is sincerely held and that his/her claim is rooted in religious belief. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008) (citing Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994)).

However, "'[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" Id. (quoting Price v. Johnson, 334 U.S. 266, 285 (1948)). A prison regulation that limits an inmate's right to free exercise of religion is valid if it is reasonably related to legitimate penological interests. Id. (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). The Court must examine four factors when determining whether a prison regulation is reasonably related to legitimate penological interests: (1)

whether there is a valid rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) whether accommodation of the asserted constitutional right will impact guards and other inmates and the allocation of prison resources generally; and (4) whether there is an absence of ready alternatives versus the existence of obvious, easy alternatives.  Id. (quoting Turner, 482 U.S. at 89-90).

The Court notes that there appears to be some confusion regarding the nature of Plaintiff's First Amendment claim.  Defendants focus on the rejection of Plaintiff's religious package as the core of Plaintiff's claims.  However, Plaintiff's First Amendment claim is based on his assertion that prison regulations promulgated and enforced by Defendants prohibited Plaintiff from receiving and possessing prayer oil.  The rejection of his religious package is merely one example of the enforcement of the regulation at issue.  Plaintiff also alleges that his prayer oil was confiscated during a cell search in July 2007, another incident that presumably related to the enforcement of the regulations being challenged.  The Court finds that Plaintiff has alleged sufficient facts to challenge the constitutionality of the regulation prohibiting the possession of prayer oil.

### 1. **Plaintiff's Failure To Allege that He Conformed With Prison Regulations Is Not Fatal To His First Amendment Claim**

Defendants argue that they are entitled to dismissal because Plaintiff has not alleged that he followed prison regulations when he attempted to obtain prayer oil. Defendants argue that Plaintiff's "religious package" containing prayer oil was or could have been rejected because Plaintiff is only allowed to receive one quarterly package per quarter and his religious package was his second quarterly package. Defendants' argument fails for a number of reasons.

First, Plaintiff does not allege, and nothing in his complaint suggests, that his religious package was rejected because it was his second quarterly package.  Plaintiff explicitly alleges that his religious package was rejected because it contained prayer oil and because a receiving and release officer told Plaintiff that the prison was rejecting all Islamic packages.  Defendants infer that Plaintiff's religious package was rejected as his second quarterly package based on Plaintiff's allegation that he received a regular quarterly package on December 27, 2007.  Defendants note that

Plaintiff's religious package was "[p]resumably" his second package because it was sent in November, and November and December are in the same quarter. (Defs.' Mot. to Dismiss 3:26-27.) However, if Plaintiff's religious package was sent in November, that package should have been accepted and the December 27, 2007 package should have been rejected as being Plaintiff's second quarterly package. Instead, the November religious package was rejected, and the December 27, 2007 package was accepted. Thus, the allegations in Plaintiff's complaint suggest that Plaintiff's November 2007 religious package was rejected on other grounds.

Second, even if Plaintiff's religious package was rejected on grounds that were unrelated to the fact that it contained prayer oil, it would not defeat Plaintiff's First Amendment claim. Plaintiff alleges that the regulation prohibiting the purchase, receipt, and possession of prayer oil was in effect until the regulation was amended in July 2008. The regulation is what gives rise to Plaintiff's claims. Plaintiff does not have to allege that a package containing prayer oil that otherwise conformed to prison regulations was rejected in order to raise a First Amendment claim. Plaintiff could not purchase, receive, or possess prayer oil while the regulation was in effect. Plaintiff does not have to attempt to purchase and receive prayer oil in order to file suit. Further, the July 2008 amendment permitting the possession of prayer oil does not extinguish Plaintiff's claims for compensatory damages for injuries he suffered prior to July 2008.

Defendant also argues that Plaintiff has not alleged that he had obtained written permission to receive or possess religious artifacts, as required by prison regulations. Defendants cite to prison regulations that require an inmate to receive written permission from the warden before possessing any religious artifact. It is unclear how this regulation interacted with the pre-July 2008 regulation prohibiting the possession of prayer oil. The regulation cited by Defendants concerns the possession of religious artifacts generally and does not appear to carve out an exception to the pre-July 2008 regulation prohibiting the possession of prayer oil. Thus, nothing in Plaintiff's complaint suggests that he could have possessed prayer oil if had received written permission from the warden. Plaintiff's failure to plead that he conformed with the prison's regulations does not warrant dismissal under Federal Rule of Civil Procedure 12(b)(6).

///

### 2. Plaintiff Alleges That His Exercise of Religion Was Substantially Impaired

Defendants also argue that Plaintiff fails to state a First Amendment claim because "plaintiff fails to state how his exercise of religion was substantially impaired" by the regulation prohibiting inmates from purchasing oil and possessing it in their cells. (Reply 7:9-16.) Defendants' argument lacks merit. In his complaint, Plaintiff alleges that "[i]t is significantly important for Plaintiff to adhere to his practices to use prayer oils during routine prayer services and in-cell obligatory prayers which is deeply rooted in Islamic doctrine, as well as a product of sincere and personal religious belief." (First Am. Compl. 11.) The Court finds the allegations in Plaintiff's complaint sufficient to state a claim for the violation of his First Amendment rights.

### C. Claims Against Warden Hedgpeth

Defendants argue that Plaintiff's claim against Defendant Hedgpeth should be dismissed because Plaintiff has not alleged that Hedgpeth was personally involved in denying Plaintiff's religious package.

Plaintiff alleges that Hedgpeth authored the regulation that prohibited the receipt and possession of prayer oil. The regulation also allegedly caused Plaintiff's religious package to be rejected by prison officials. Further, the regulation allegedly prohibited Plaintiff from receiving or possessing prayer oil until it was amended in July 2008. Plaintiff's claim against Hedgpeth is not vague or conclusory. Plaintiff specifically identifies and describes the regulation allegedly authored by Hedgpeth. The Court finds Plaintiff's allegations sufficient to state a claim against Defendant Hedgpeth.

## III. Conclusion and Recommendation

The Court finds that Plaintiff's first amended complaint alleges sufficient facts to state a claim under Section 1983 for the violation of Plaintiff's First Amendment rights. Plaintiff alleges that: (1) Defendant Hedgpeth promulgated a regulation that prohibited the purchase, receipt, and possession of prayer oil; (2) Defendants Marta and Amavisca enforced that regulation against Plaintiff; and (3) the possession and use of prayer oil in Plaintiff's cell is rooted in his sincerely held religious beliefs.

Accordingly, the Court HEREBY RECOMMENDS that Defendants' motion to dismiss, filed on November 19, 2009, be DENIED.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   June 30, 2010**                              /s/ Sheila K. Oberto
                                                        UNITED STATES MAGISTRATE JUDGE

9