1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9    SY LEE CASTLE,                              CASE NO. 1:08-cv-01754-AWI-SMS

10                          Plaintiff,           FINDINGS AND RECOMMENDATIONS
                                                 RECOMMENDING GRANTING
11          v.                                   DEFENDANTS' MOTION FOR SUMMARY
                                                 JUDGMENT
12   A. HEDGPETH, et al.,
                                                 (ECF Nos. 84, 94, 95)
13                          Defendants.
     _____ /        OBJECTIONS DUE WITHIN THIRTY DAYS
14

15   **I.    Procedural History**

16          Plaintiff Sy Lee Castle ("Plaintiff") is a state prisoner proceeding pro se and in forma

17   pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding on

18   Plaintiff's first amended complaint filed May 12, 2009, against Defendants Hedgpeth, Marta, and

19   Amavisca for violating Plaintiff's First Amendment right to free exercise of religion.  (ECF No. 7.)

20   Defendants filed a motion for summary judgment on April 20, 2011.  (ECF No. 84.)  Plaintiff filed

21   an opposition on July 5, 2011.[1]  (ECF No. 94.)  Defendants filed a reply on July 13, 2011.  (ECF No.

22   95.)

23   **II.   Summary Judgment Legal Standard**

24          Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when

25   it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party

26

27   _____

     [1]Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the
28   Court in an order filed on June 14, 2011, and provided with 15 days to file an amended opposition to Defendant's
     motion for summary judgment.  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

is entitled to judgment as a matter of law.  Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  However, the court is to liberally construe the filings and motions of pro se litigants.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010.)  The "party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323 (quoting Rule 56(c) of the Federal Rules of Civil Procedure).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.

The parties bear the burden of supporting their motions and oppositions with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record for consideration.  Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).  The Court will not undertake to mine the record for triable issues of fact.  Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1017 (9th Cir. 2010)

**III.    Plaintiff's Allegations**

Plaintiff alleges that Defendant Hedgpeth promulgated a regulation that prohibited the purchase, receipt, and possession of prayer oil.  Defendants Marta and Amavisca enforced the regulation against Plaintiff.  The possession and use of prayer oil in Plaintiff's cell is rooted in his sincerely held religious beliefs, and Defendants denied him prayer oil in violation of the Free

1  Exercise Clause of the First Amendment.[2]

2  **IV.   Undisputed Facts**

3  1.      Defendant Hedgpeth was the Warden of Kern Valley State Prison ("KVSP") from January
4          1, 2007 through December 1, 2008.

5  2.      All prisons within the California Department of Corrections and Rehabilitation ("CDCR")
6          are governed by the Department Operations Manual ("DOM").

7  3.      A warden has discretion to establish a supplement to the DOM based upon the needs of his
8          or her particular institution.[3]

9  4.      On December 7, 2007, Defendant Hedgpeth implemented DOM Supplement 101060,
10         mandating that inmate prayer oils be contained in factory sealed plastic see-through
11         containers, prohibiting inmates from possessing prayer oils in their cells, and from
12         purchasing prayer oils generally.

13 5.      DOM Supplement 101060 was created in response to serious safety and security concerns
14         that had arisen at KVSP.  Prior to establishing DOM Supplement 101060, KVSP officials
15         determined that a rogue Chaplain was smuggling contraband into the prison and distributing
16         the contraband to inmates.  One way that the contraband was disseminated was through the
17         distribution of containers of prayer oils.[4]

18 6.      KVSP is a Level IV high-security prison.  Level IV prisons house the most dangerous and
19         violent inmates incarcerated in the State of California.  The possibility of unknown
20         contraband in the possession of Level IV inmates under the guise of prayer oil constitutes a

---

[2]The screening order failed to clarify the claims that were found to be cognizable.  The claims that are proceeding in this action were identified in the findings and recommendations recommending that Defendants' motion to dismiss be denied.  (Findings and Recommendations 8:23-28, ECF No. 37.)

[3]Plaintiff denies that a warden has discretion to implement a regulation as an exaggerated response to speculative security concerns.

[4]Plaintiff disputes that there was a serious safety and security concern because Defendants have not stated what was being smuggled into the institution or proved that an investigation occurred.  Additionally Plaintiff argues that his package arrived prior to alleged smuggling of contraband being discovered.

3

1    serious breach of security.[5]

2    7.   Therefore, Defendant Hedgeth was compelled to create DOM Supplement 101060 in order

3         to make sure that inmates were not in possession of contraband, to prevent any contraband

4         from being brought in, and to eradicate the contraband that existed.[6]

5    8.   Under DOM Supplement 101060, inmates were still allowed to use prayer oils in the prison

6         chapel, which was open to inmate use during the day, as well as during religious services.

7         Because inmates were still able to use prayer oils, and the institution was able to address the

8         compelling governmental interest of removing contraband, this was determined to be the

9         least restrictive means of ensuring the safety and security of the institution.[7]

10   9.   Plaintiff was able to pray five times per day while DOM Supplement 101060 was in effect.

11   10.  Soon after implementing DOM Supplement 101060, KVSP staff began the process of

12        investigating and removing the contraband that the Chaplain had distributed to inmates. The

13        Chaplain at issue was also removed from the prison following an investigation by the Office

14        of Internal Affairs.[8]

15   11.  DOM Supplement 101060 was implemented to address a serious security concern at the

16        prison, while still allowing inmates access to prayer oils in the prison chapel. Furthermore,

17        DOM Supplement 101060 applied to all inmates, regardless of religious affiliation.[9]

18   12.  On July 8, 2008, after resolving all lingering safety and security concerns with inmates

19        possessing prayer oils, Defendant Hedgeth issued an addendum to DOM Supplement

20        101060, which allowed inmates to purchase sixteen ounces of prayer oils from approved

21

22   _____

23        [5]Plaintiff denies that the possession on unknown contraband by Level IV inmates constitutes a serious
     breach of security.

24        [6]Plaintiff denies that Defendant Hedgeth was compelled to create DOM Supplement 101060 because
     Defendants have not proved that a chaplain distributed contraband to any inmates.

25
         [7]Plaintiff disputes that he could use prayer oil in the Chapel because majority of time the regulation was in
26   effect the institution was on modified lock down.

27        [8]Plaintiff denies that any investigation occurred due to the response to his inmate appeal.

28        [9]Plaintiff denies that the supplement was implemented in response to a serious security concern at the
     prison.

                                               4

vendors, as long as the prayer oil was in a sealed clear plastic container, and was non-alcoholic and non-flammable.  Prayer oils were no longer to be stored in the Chapel, and Chaplains were not allowed to buy, donate, or distribute prayer oils to inmates, in order to prevent further dissemination of contraband.[10]

13.   Plaintiff acknowledges that safety and security override other concerns in a prison setting.

14.   Defendant Marta is a sergeant in Receiving and Release at KVSP. As a sergeant in Receiving and Release, it is Defendant Marta's responsibility to supervise the screening of all inmate packages that enter KVSP.

15.   Defendant Amvisca is a correctional officer assigned to Receiving and Release.  Defendant Amavisca's job responsibilities include screening inmate packages that enter KVSP to make certain that they are in compliance with institutional policy and do not contain contraband or other items that are prohibited from entering the prison.

16.   Defendants Amavisca and Marta complied with the requirements of DOM Supplement 101060.[11]

17.   Any failure to comply with DOM Supplement 101060 would have been insubordination, and Defendants Amavisca and Marta could have been disciplined accordingly, had they permitted inmates to receive prayer oil.

18.   From December 7, 2007 to July 8, 2008, Defendants Amavisca and Marta enforced DOM Supplement 101060 in an equal and non-discriminatory manner.  All prayer oils purchased by any inmate, regardless of religious affiliation, were returned to the vendors who sent the prayer oils to the institution.

19.   Neither Defendant Amavisca nor Defendant Marta know Plaintiff, and it is unlikely that they would have ever had knowledge of him if not for this lawsuit.  Defendants Amavisca and Marta did not act to interfere with Plaintiff's religious observance, but only to comply with

---

[10]Plaintiff denies that a serious security concern ever existed.

[11]Plaintiff denies that Defendants Marta and Amavisca complied with the requirements of the supplement, because they took it upon themselves and returned his religious package to the vendor.

1    institutional policy.[12]

2    20.    Muslim Chaplain O'Meira is the Muslim chaplain at the California State Prison-Los Angeles

3           County ("Lancaster").

4    21.    In 1967, Muslim Chaplain O'Meira graduated as Imam from the Anssar Islamic Institute in

5           Damascus, Syria, where he studied under the Syrian Grand Mufti.  Additionally, he is co-

6           founder of the Islamic Center of North Valley, which offers prayer services and Islamic

7           instruction to the Muslim communities of Lancaster and Palmdale, California.  Moreover,

8           Chaplain O'Meira is currently a student of Advanced Islamic Studies at the Cloverdale

9           Seminary, of Mishawaka, Indiana.

10   22.    Among other things, Chaplain O'Meira's job duties include providing spiritual guidance to

11          Muslim inmates, presiding over Jumah Prayer Services, Ramadan, and other Islamic days

12          of religious observance, and instructing classes in Islamic religion.

13   23.    Pursuant to the Quran, the seminal religious text of Islam, Muslims are required to pray five

14          times per day; however, the Quran does not state that Muslims are required to use prayer oils

15          during prayer or in preparation for prayer.

16   24.    In Chaplain O'Meira's expert opinion, the use of prayer oils in Islam is complimentary to

17          prayer, but is not mandatory.[13]

18   **V.    Qualified Immunity**

19          **A.    Legal Standard**

20          The doctrine of qualified immunity protects government officials from civil liability where

21   "their conduct does not violate clearly established statutory or constitutional rights of which a

22   reasonable person would have known."  Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting

23   Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  To determine if an official is entitled to qualified

24   immunity the court uses a two part inquiry.  Saucier v. Katz, 533 U.S. 194, 200 (2001).  The court

25   determines if the facts as alleged state a violation of a constitutional right and if the right is clearly

26

27          [12]Plaintiff denies that Defendants Marta and Amavisca complied with institutional policy.

28          [13]Plaintiff disputes this fact as it is his sincerely held religious belief that he is required to use prayer oil.

6

established so that a reasonable official would have known that his conduct was unlawful. Saucier, 533 U.S. at 200. A district court is "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 129 S. Ct. at 818. The inquiry as to whether the right was clearly established is "solely a question of law for the judge." Dunn v. Castro, No. 08-15957, 2010 WL 3547637, at *2 (9th Cir. Sept. 14, 2010) (quoting Tortu v. Las Vegas Metro. Police Dep't. 556 F.3d 1075, 1085 (9th Cir. 2009)).

## B. Defendants' Argument

Defendants argue that they are entitled to summary judgment because Plaintiff has failed to demonstrate that they violated the Free Exercise Clause of the First Amendment. Additionally, Defendants are entitled to qualified immunity because they acted in good faith and reasonably believed their actions were lawful.

Defendant Hedgpeth promulgated DOM Supplement 101060, which temporarily prohibited inmates from purchasing and possessing prayer oil, in response to a legitimate security concern. The deprivation of prayer oil was temporary and an alternative means was available for Plaintiff to practice his religion. Plaintiff was able to pray in his cell and the use of prayer oil is not required by Muslims during prayer or in preparation for prayer.

DOM Supplement 101060 was instituted after it was determined that contraband was being smuggled into the prison in prayer oil by a chaplain. The smuggling of contraband caused a serious security breach. A similar policy was upheld by the Tenth Circuit in Hammons v. Saffle, 348 F.3d 1250, 1254 (10th Cir. 2003), even though the policy in that instance was not in response to a specific security risk. Defendant Hedgpeth had a legitimate penological interest in enacting the policy, and Defendants Marta and Amavisca had a legitimate penological interest in enforcing the policy. The policy was a temporary measure that was lifted as soon as the security threat was eradicated. Inmates were allowed to use prayer oil during religious services and in the Chapel which was open for inmates during the day. It would have been impractical to allow inmates to retain their prayer oil as the scope of the smuggling was unknown and allowing inmates to possess prayer oil would have constituted an unreasonable risk to the safety of inmates and staff because the contraband would not

1  be eradicated.

2        Defendants also argue they are entitled to qualified immunity because they did not violate

3  Plaintiff's constitutional rights as the policy was promulgated in response to a serious security

4  concern.  In promulgating the regulation Defendant Hedgpeth had to balance the inmates' rights to

5  exercise their religion with the duty to protect inmates and staff from the substantial risk created by

6  inmates possessing contraband.  A reasonable prison official choosing to protect the safety of

7  inmates and staff at the expense of the inmates' rights to exercise their religion would believe his

8  conduct was lawful.  Defendants Amavisca and Marta were reasonable in relying on the regulation

9  as it was valid pursuant to CDCR policy.  Defendants would not have been on notice that adhering

10  to the policy would be unlawful.

11        The Court finds that Defendants have met their initial burden of informing the Court of the

12  basis for their motion, and identifying those portions of the record which they believe demonstrate

13  the absence of a genuine issue of material fact.  The burden therefore shifts to Plaintiff to establish

14  that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus., 475 U.S.

15  at 586.

16        **C.**    **Plaintiff's Opposition**

17        Plaintiff argues that his family purchased an Islamic religious package for him that contained

18  a prayer rug and prayer oil.  The package containing his prayer oil arrived at KVSP prior to the

19  regulation being implemented prohibiting inmates from receiving prayer oil.  The shipment arrived

20  in November 2009 prior to the discovery that contraband was being smuggled into the institution in

21  prayer oil.  Since his shipment arrived at the institution prior to the discovery of the alleged

22  smuggling, Defendants violated his First Amendment rights to free exercise of religion.

23  (Memorandum of Points and Authorities 3, ECF No. 94.)  On February 2, 2008, Plaintiff's first level

24  appeal response stated that there was no investigative reason to withhold religious packages from

25  Islamic inmates and receiving and release was instructed to release the religious packages to Islamic

26  inmates.  Therefore, there was never a safety or security concern regarding contraband being

27  smuggled into the institution.  (Id. at 4.)

28        Since the institution never stated what the contraband was that was allegedly being smuggled

1    into the institution, Defendants have never proved the necessity of the regulation. (Id. at 3-4.) Also,

2    while Defendants claim that prayer oil was available in the chapel, Plaintiff was not able to use

3    prayer oil because he was not allowed to purchase or possess it and during the majority of time the

4    regulation was in effect the institution was on modified lock down. (Id. at 5.)

5        The regulation did not state that packages were to be returned to the vendor, and Defendants

6    Marta and Amavisca took it upon themselves to return Plaintiff's package to the vendor. (Id. at 6.)

7    Defendants Marta and Amavisca failed to follow regulations that requires that any item considered

8    to be contraband be shall be retained by staff for investigation. (Id. at 7.) Additionally, even after

9    inmates were allowed to receive prayer oil, Defendants continued to consider religious packages as

10    personal property packages in violation of the regulations. (Id. at 8.) Prayer oil is a significant part

11    of Plaintiff's Muslim belief. (Id. at 9.) There was no investigation into contraband being smuggled

12    into the institution in prayer oil. (Id. at 13.) No documents exist that state a chaplain can distribute

13    prayer oil to inmates and chaplains have never been authorized to bring prayer oil to inmates. (Id.

14    at 17.) Defendants have not proved that there was contraband being smuggled into the institution

15    in prayer oil and they used an exaggerated  response to a speculative security concern.  Since

16    Plaintiff has a sincerely held belief that it is mandatory for him to use prayer oil, Defendants are not

17    entitled to summary judgment. (Id. at 11.) There was no alternative means of using prayer oil as

18    there was no prayer oil in the chapel. (Id. at 19.)

19        Defendants are not entitled to qualified immunity because they violated Plaintiff's First

20    Amendment right. Id. at 22. There was no serious safety risk due to contraband being smuggled into

21    the institution and Defendant Hedgpeth was unreasonable in implementing the regulation. Plaintiff's

22    package arrived at KVSP prior to Defendant Hedgpth implementing the DOM supplement

23    prohibiting inmates from purchasing and possessing prayer oil. Defendants held onto Plaintiff's

24    package even though it was purchased from an approved vendor and was received prior to the

25    alleged smuggling of contraband being discovered. Defendants have never proved what contraband

26    was smuggled to inmates in prayer oil. On February 2, 2008, in response to his appeal, Lt.

27    Whitehead stated there was no investigative reason to withhold religious packages from Islamic

28    inmates. If there was a valid security concern Lt. Whitehead would have been informed. Defendants

were considering religious special package purchases as regular personal property in violation of Title 15.  (Id. at 23.)

**D.    Defendants' Reply**

Defendants argue that Plaintiff has failed to raise a triable issue of fact and the Court should grant Defendants' motion for summary judgment.  Defendants have demonstrated that the regulation was promulgated in response to a serious security concern and was reasonably related to a legitimate correctional purpose.  Relying on two sentences in a response to his administrative appeal, Plaintiff alleges that no investigation of the purported smuggling occurred.  The statement does not contradict Defendants' position.  There was not an investigation into Muslim inmates.  Nor was there any reason to withhold packages from Muslim inmates.  The regulation applied to all prayer oil, no matter the religious affiliation of the inmate.

Plaintiff claims that because he was not provided with details of the investigation, no investigation occurred.  However, there are legitimate reasons for not disclosing the information to Plaintiff, a Level IV inmate.  Defendants have provided evidence that an investigation occurred in the declarations provided in support of their motion for summary judgment.  Additionally, Plaintiff alleges that his package was received prior to the regulation being promulgated.  However, the discovery that contraband was being smuggled into the institution occurred prior to the regulation being promulgated and the regulation was in response to the discovery.

Plaintiff argues that prison regulations were violated, however violations of prison regulations do not rise to the level of a constitutional violation.  Alternative means of exercising his religious beliefs were still available to Plaintiff.  He was still able to pray five times per day.  Even if Plaintiff did not have access to prayer oil, Plaintiff was able to and did continue to practice his religion during the time that inmates were not allowed to possess prayer oil.

Finally, Defendants are entitled to qualified immunity because reasonable prison officials in Defendants' position would not believe their conduct was unlawful.

**E.    Discussion**

"Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment,

1   distraction, and liability when they perform their duties reasonably." <u>Pearson</u>, 129 S. Ct. at 815.  The

2   objective of qualified immunity is to resolve insubstantial claims against government officials prior

3   to discovery.  <u>Id.</u> at 815.  Because qualified immunity is an immunity from suit rather than a defense

4   to liability, the issue of qualified immunity should be resolved at the earliest possible stage of the

5   litigation.  <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991) (per curiam).

6       Qualified immunity allows for mistakes in judgment and protects "all but the plainly

7   incompetent or those who knowingly violate the law."  <u>Hunter</u>, 502 U.S. at 229 (quoting <u>Malley v.</u>

8   <u>Briggs</u>, 475 U.S. 335, 341 (1986).  Defendants are entitled to qualified immunity for civil damages

9   if "their conduct does not violate clearly established statutory or constitutional rights of which a

10  reasonable person would have known."  <u>Pearson</u>, 129 S. Ct. at 815.

11      Under <u>Pearson</u>, the Court has the discretion to determine which of the two prongs of the

12  qualified immunity analysis should be addressed first.  In cases where it is plain that the

13  constitutional right is not clearly established, the use of judicial resources is best served by first

14  deciding the second prong of the qualified immunity analysis.  <u>Pearson</u>, 129 S. Ct. at 818.

15  Accordingly, the Court will first address whether the right was clearly established.

16      Plaintiff has the burden of proving that the alleged constitutional violation was clearly

17  established at the time of the defendants' alleged misconduct.  <u>May v. Baldwin</u>, 109 F.3d 557, 561

18  (9th Cir. 1997).  The right Plaintiff alleges has been "violated must be defined at the appropriate

19  level of specificity before a court can determine if it was clearly established."  <u>Dunn</u>, 2010 WL

20  3547637, at *4 (quoting <u>Wilson v. Layne</u>, 526 U.S. 603, 615 (1999)).  The constitutional right to be

21  addressed in this instance is not the right to freely exercise religion, but Plaintiff's right to exercise

22  his religious beliefs by possessing prayer oil.

23      Plaintiff alleges that there is no evidence that the regulation was promulgated in response to

24  a safety and security threat, however the declarations submitted by Defendants do constitute

25  evidence. (Declaration of A. Hedgpeth 2:25-3:9, 3:16-26.)  Defendants are not required to identify

26  the contraband that was being smuggled in the prayer oil to establish that there was a valid safety

27  concern.

28      In his sworn declaration Defendant Hedgpeth states that DOM Supplement 101060 was

implemented after it was discovered that a rogue Chaplain was smuggling contraband into the prison and distributing the contraband to inmates. (Declaration of A. Hedgpeth 2:25-3:1, ECF 84-6.)  After an investigation by Internal Affairs the chaplain involved was removed from the prison. (Id. at 3:18-19.)  In his response to Plaintiff's interrogatories Defendant Hedgpeth responded that distribution of packages to Muslim inmates never stopped.  Certain packages were not delivered due to the non-compliance with prison regulations and the suspicion that a prison chaplain was smuggling contraband into the prison in religious packages. (Opp. 105, ECF No. 94.)  Additionally, in response to Plaintiff's request for admissions, Defendant Marta stated that he was aware of documentation determining that a chaplain was smuggling contraband into the prison and distributing it to inmates through the distribution of containers of prayer oil. (Opp. 93, ECF No. 94.)

Plaintiff cannot defeat a motion for summary judgment by questioning the credibility of the moving parties evidence.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (once the moving party demonstrates the absence of a genuine issue of material fact, the burden shifts to the non-moving party to produce evidence sufficient to support a jury verdict).  Defendants have submitted evidence that the regulation was implemented in response to a legitimate security concern.

Plaintiff claims that the response to his inmate appeal proves that no security concern existed. Plaintiff was part of a group appeal complaining that Islamic inmates were not receiving their religious packages.  On February 1, 2008, Lt. Whitehead interviewed Plaintiff and responded to the appeal on February 8, 2008.  The appeal response stated:

> [o]n February 2, 2008, Lieutenant Whitehead asked the Investigative Services Unit lieutenant if there were any investigative reasons why the Islamic inmates on Facility "B" could not receive religious packages.  Lieutenant Whitehead was informed that there were no investigative reasons to withhold Religious Packages from the Islamic inmates on Facility "B".  On February 2, 2008, Lieutenant Whitehead instructed the R&R staff to proceed with the distribution of Religious Packages for the Islamic inmates on Facility "B".

Compl. 22, ECF No. 1.)

Plaintiff alleges that the statements made in this response proves that there was never an investigation and, therefore, no legitimate security concern existed.  The Court declines to accept Plaintiff's conclusion.  By this time the DOM Supplement, implemented December 7, 2007, had been in place for approximately two months. The investigation into contraband being smuggled into

1  the institution in prayer oil was not an investigation into "Islamic" Religious Packages.  All packages

2  containing prayer oil would be withheld under the regulation, regardless of religious affiliation.

3  Plaintiff's package was not being withheld because it was an Islamic package, but because it

4  contained prayer oil in violation of the Supplement.[14]

5      The Ninth Circuit has affirmed a district court's grant of summary judgment against a

6  Muslim inmate's free exercise claim for prison officials prohibiting him from purchasing a hygienic

7  prayer rug.[15]  Akbar v. Gomez, 122 F.3d 1069 (9th Cir. 1997); see also Campbell v. Almeida, No.

8  C 03-4984 PJH (PR), 2006 WL 2734330 (N.D. Cal. Sept. 25, 2006) (inmate's First Amendment

9  rights not violated by refusal to allow him to possess prayer oil in his cell and defendants are entitled

10  to qualified immunity as the right is not clearly established under either the First Amendment or

11  RLUIPA).   Other circuits have rejected inmates' free exercise claims on the confiscation or

12  prohibition of religious property.  See Pressley v. Beard, 266 Fed.Appx. 216, 218-19 (3d Cir. 2008)

13  (confiscation of Muslim inmates' hardbound Koran, prayer rug, and kufi was in furtherance of a

14  legitimate penological objectives and did not violate the First Amendment); Arguello v. Duckworth,

15  106 F.3d 403 (7th Cir. 1997) (affirming district court's grant of summary judgment against plaintiff

16  challenging restriction on use of religious artifacts).

17      The Tenth Circuit affirmed a grant of summary judgment where an inmate was prohibited

18  from possessing prayer oil in his cell due to prison officials concerns in maintaining prison order and

19  safety.  Hammons, 348 F.3d 1250 (10th Cir. 2003); see also Alamiin v. Miller, No. CIV-08-1371-F,

20  2010 WL 3603150, *22-25 (W.D.Okla. June 28, 2010) (granting summary judgment for prison

21

22      [14]To the extent that Plaintiff is alleging constitutional violations due to Defendants noncompliance with

23  Title 15 regulations, there is no independent cause of action for a violation of Title 15 regulations.  "To the extent
    that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that

24  guaranteed by the federal Constitution, [s]ection 1983 offers no redress."  Sweaney v. Ada County, Idaho, 119 F.3d
    1385, 1391 (9th Cir. 1997), quoting Lovell v. Poway Unified Sch. Dist., 90 F.3d 367, 370 (9th Cir. 1996).  There is

25  not a single reported case giving an independent cause of action  for violation of Title 15 regulations.  (See Davis v.
    Kissinger, No. CIV S-04-0878 GEB DAD P, 2009 WL 256574, *12 n.4 (E.D.Cal. Feb. 3, 2009)  Nor is there any

26  liability under § 1983 for violating prison policy.  Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009) (quoting
    Gardner v. Howard, 109 F.3d 427, 430 (8th Cir. 1997)).

27

28      [15]In determining whether the law is clearly established for qualified immunity purposes, the court should
    look at all decisional law, including district court and unpublished cases.  Al-Kidd v. Ashcroft, 598 F.3d 1129, 1135
    (9th Cir. 2010).

1   officials where Muslim inmate was denied opportunity to participate in congregational prayer, denied

2   request to observe some aspects of Ramadan, and denied request to carry prayer oil on his person);

3   Thomas v. Little, No. 07-1117-BRE/egb, 2009 WL 1938973 (W.D.Tenn. July 6, 2009) (granting

4   summary judgment for defendants where inmate was required to purchase prayer oil from specific

5   vendor and oil was required to be stored in the property room and distributed by the chaplain);

6   Abdullah v. Anderson, No. 5:05-cv-00568, 2008 WL 4103980, *14 (S.D.W.Va. Sept. 2, 2008)

7   (limiting the number of kufis and bottles of  prayer oil inmate could possess and withholding

8   language translator did not prevent free exercise of religion in violation of the First Amendment);

9   Ghashiyah v. Wisconsin Dept. of Corrections, No. 01-C-10, 2007 WL 2822005, *21-22 (E.D.Wis.

10  Sept. 27, 2007) (denying Muslim inmate right to possess prayer oil did not violate inmate's free

11  exercise rights where it was rationally related to a legitimate penological interest).

12          In sum, Plaintiff has failed to identify, and the Court is unable to find, any authority that

13  would have reasonably placed Defendants on notice that prohibiting Plaintiff from possessing prayer

14  oil in his cell would violate the First Amendment.  Defendant Hedgpeth did not violate a clearly

15  established right by promulgating the regulation prohibiting inmates from possessing prayer oil in

16  their cells in response to a safety and security threat to the institution.

17          Nor did Defendants Amavisca and Marta violate a clearly established right by returning

18  Plaintiff's package which contained prayer oil.  Plaintiff's family purchased a religious package that

19  was mailed to him on November 14, 2007.  (Plaintiff's Statement of Disputed Facts 2, ECF No. 94.)

20  While Plaintiff argues that his package was received prior to the discovery of any alleged smuggling

21  on contraband in prayer oil, the facts fail to support this.  Plaintiff's package was purchased on

22  November 14, 2007, and mailed on that date or later.  The regulation at issue was implemented on

23  December 10, 2007, less than one month after Plaintiff's package was purchased.  The evidence

24  shows that at the time Plaintiff's package was received, the safety and security concern had been

25  discovered and Defendant Hedgpeth was addressing the concern.  Shortly after the date Plaintiff's

26  package arrived the regulation was effective and Defendants did not violate a clearly established

27  right by holding Plaintiff's package pending the implementation of the pending regulation.

28          Since the right was not clearly established at the time Defendants acted, Defendants are

1 | entitled to qualified immunity.

2 | **VI.   Conclusion and Recommendation**

3 |   The Court finds that Defendants Hedgpeth, Amavisca, and Marta are entitled to qualified

4 | immunity because the right of an inmate to possess prayer oil was not clearly established when the

5 | regulation was promulgated and enforced.   Accordingly, based on the foregoing, the Court

6 | HEREBY RECOMMENDS that Defendants' motion for summary judgment, filed April 20, 2011,

7 | be GRANTED, thus concluding this action in its entirety.

8 |   These findings and recommendations will be submitted to the United States District Judge

9 | assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).   Within thirty (30)

10 | days after being served with these findings and recommendations, Plaintiff may file written

11 | objections with the Court.   The document should be captioned "Objections to Magistrate Judge's

12 | Findings and Recommendations."   Plaintiff is advised that failure to file objections within the

13 | specified time may waive the right to appeal the District Court's order.   <u>Martinez v. Ylst</u>, 951 F.2d

14 | 1153 (9th Cir. 1991).

18 | IT IS SO ORDERED.

19 | **Dated:   __July 26, 2011__**         __/s/ Sandra M. Snyder__
20 |           UNITED STATES MAGISTRATE JUDGE